**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND HAWKINS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-3142** |
| | : | |
| **ROBERT ROSE, *et al.*,** | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**SCHMEHL, J. /s/ JLS**                                   **SEPTEMBER 21, 2022**

Plaintiff Raymond Hawkins, an inmate currently confined at Berks County Prison, filed this action alleging violations of his civil rights based on events that occurred while he was confined at various detention facilities in Philadelphia, Pennsylvania. Hawkins also seeks leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed in part with prejudice and in part without prejudice, and one claim will be permitted to proceed at this time. Hawkins will be granted the option to proceed on that one claim or file an amended complaint as set forth more fully below.

## I.      FACTUAL ALLEGATIONS[1]

The events alleged in the Complaint occurred at various times between September 2020 and July 2022 while Hawkins was a prisoner in the custody of the Philadelphia Department of Prisons. (Compl. at 10-13.) During that time, Hawkins was housed at Curran-Fromhold Correctional Facility ("CFCF"), the Philadelphia Detention Center ("DC"), and Philadelphia

---

[1] The allegations set forth in this Memorandum are taken from Hawkins's Complaint and the public dockets, of which the Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the pagination supplied by the CM/ECF docketing system.

Industrial Correctional Center ("PICC").  (*See id.* at 10.)[2]  Named as Defendants are: (1) Robert Rose, Deputy Warden of CFCF; (2) "L. Porrata," a Correctional Officer assigned to CFCF; (3) "Malloy," a Lieutenant assigned to CFCF; (4) "Demoe," a Correctional Officer assigned to PICC; (5) "Riley," a Sergeant assigned to DC; (6) "Thomas," a Sergeant assigned to DC; (7) "Crawford," a Sergeant assigned to CFCF; (8) "McCullum," a Correctional Officer assigned to PICC; (9) "K. Kurian," a Correctional Officer assigned to DC; and (10) the Philadelphia Department of Prisons.  (*Id.* at 2-6, 8-9.)  Each Defendant is named in his or her individual and official capacities.  (*Id.* at 9.)

Hawkins was quarantined upon his intake at CFCF on September 26, 2020.  (*Id.* at 13.) He alleges that he did not receive "an additional jumper and a hygiene packet which includes soap, toothpaste, toothbrush, towel, and wash rag" and was told by the intake officer that he would "get everything . . . [he] need[ed] later."  (*Id.*)  He again inquired about the jumper and hygiene packet on October 1, 2020, because he was unable to shower without the missing items. (*Id.*)  Hawkins was told by the Sergeant on the 3-11 p.m. shift that Hawkins "would have to speak with the morning shift because he was ready to leave for the day and wasn't going out of his way for some soap."  (*Id.*)  Hawkins filed a grievance "to get additional help."  (*Id.* at 13, 29.)

While housed at DC on April 25, 2021, Hawkins was involved in an altercation with several inmates, charged with violating prison regulations, and placed in segregated housing.

---

[2] State court records reveal that Hawkins was arrested in Philadelphia on September 25, 2020 on a firearms charge.  *Commonwealth v. Hawkins*, MC-51-CR-0018385-2020 (M.C. Phila.).  A guilty plea was entered and Hawkins was sentenced on September 29, 2021.  *Commonwealth v. Hawkins*, CP-51-CR-0000207-2021 (C.P. Phila.).  Charges also were filed against Hawkins in September 2021 on an unrelated matter in Berks County.  *Commonwealth v. Hawkins*, MJ-23101-CR-0000311-2021 (M.D.J. 23-1-01).  He was sentenced on these charges in August 2022. *Commonwealth v. Hawkins*, CP-06-CR-0000127-2022 (C.P. Berks).  Thus, it appears that prior to September 29, 2021, Hawkins was held in custody as a pretrial detainee, and thereafter, as a convicted prisoner.

(*Id.* at 14.)  He received a write up the following day.  (*Id.*)  On May 4, 2021, Hawkins "asked

his block officer" when disciplinary hearings were held and was told that he "would have to ask

a white shirt."  (*Id.*)  Hawkins also asked Defendant Riley about the status of the hearings and

was told that "he didn't think they were doing hearings, but once he [found] out he would let

Hawkins know."  (*Id.*)  Because he still had not been given a disciplinary hearing, Hawkins filed

a grievance on May 10, 2021.  (*Id.* at 14, 30.)  Hawkins claims that he "got 30 days in the hole"

as a result of this incident.  (*Id.* at 14.)

On July 17, 2021, Hawkins was involved in another altercation at DC.  (*Id.*)  Hawkins

again was charged with violating prison regulations, placed in segregated housing, and received

a "write up" the following day from Defendant Thomas.  (*Id.*)  When asked by Hawkins,

Defendant Thomas expressed that he did not know when the disciplinary hearing would be held.

(*Id.*)  As a result, Hawkins filed a grievance on July 30, 2021.  (*Id.* at 14, 32.)  Hawkins claims

that he "found out he received 30 days in segregation from the officer working his block."  (*Id.* at

14.)

Hawkins was transferred from DC to CFCF on October 24, 2021.  (*Id.* at 15.)  On

November 10, 2021, Hawkins "explained to Defendant L. Porrata that Hawkins was not given

two jumpers nor a hygiene packet while coming through intake."  (*Id.*)  When Hawkins asked

Defendant Porrata for assistance in obtaining the items, he was told "that he was not getting up

right now and that Hawkins should of asked while in the receiving room."  (*Id.*)  When Hawkins

asked Defendant Malloy for assistance in obtaining the items, she indicated "that she didn't work

for laundry, couldn't get the jumper, and it wasn't her fault Hawkins didn't receive a hygiene

packet, that it was on the intake officer."  (*Id.*)  Hawkins filed a grievance "seeking help from

someone above Defendant Lieutenant Malloy."  (*Id.*)

Hawkins alleges that he explained to Defendant Rose at "a routine hearing that[']s conducted on Tuesdays and Thursdays" that he had not received "the proper intake items and only had one jumper, [therefore] Hawkins wasn't able to shower properly." (*Id.* at 15-16.) Hawkins also claims that he informed Defendant Rose that "there has been no sheets exchange or uniform exchange" and that Hawkins was denied help by Defendants Porrata and Malloy. (*Id.* at 16.) According to Hawkins, Defendant Rose told him that "there is no sheets or uniform exchange because they had none," but Hawkins disputed the veracity of this statement. (*Id.*) Defendant Rose indicated that if Hawkins "kept trying to debate with Rose he wouldn't look into Hawkins being put back on population." (*Id.*) He claims that "while on protective custody for over a month Hawkins was in one jumpsuit." (*Id.*)

Hawkins further alleges that he learned on December 15, 2021, that "a petition was put in for him by [the] probation department" but that the "Commonwealth opposed the petition for early release due to Hawkins['s] jail summary which included his write ups from March April and July." (*Id.*) Hawkins asserts that "[d]ue to the Commonwealth denying the petition Hawkins was not released and the Judge did not answer or respond to the petition." (*Id.*)

On February 16, 2022, Hawkins was returned to PICC after spending a month in Berks County Prison. (*Id.* at 18.) Hawkins "explained to Defendant Demoe that Hawkins couldn't take his property with him to Berks County and after being gone a month Hawkins['s] property was probably gone, so Hawkins requested two sets of blues (uniforms) and a roll-up with hygiene packet." (*Id.*) However, Hawkins was given one "set of blues and two sheets" and told by Defendant Demoe that "he could get the other stuff from Hawkins['s] peers on the block." (*Id.*) Hawkins filed a grievance requesting the items he failed to receive during intake. (*Id.*)

On February 18, 2022, Hawkins "complained to Defendant McCullum about having a mattress with no plastic on it and that the mattress needed to be cleaned due to the mattress having a smell and being wet." (*Id.*)  Defendant McCullum indicated that "she wasn't going to get any mattresses right now" despite Hawkins's assertion that there were open cells with mattresses, and thus, no need "for her to go to the receiving room when the [mattresses] could be swapped out." (*Id.*)  Hawkins claims that Defendant McCullum again declined to do "all that right now" and further refused Hawkins's request to call a Sergeant "over a mattress." (*Id.*) Consequently, Hawkins filed a grievance regarding the condition of his mattress.  (*Id.* at 18-19.)

Hawkins also claims that, after his return to PICC from Berks County Prison,[3] he informed a nurse on February 27, 2022 that he "was not receiving his medication." (*Id.* at 19.) The nurse told Hawkins that she would look into the matter and that he should also submit a sick call slip.  (*Id.*)  Hawkins submitted a sick call slip on February 28, 2022, and submitted a second slip on March 10, 2022, after receiving no response to the first slip.  (*Id.*)  Hawkins alleges that "some time in late June a nurse from mental health came to see Hawkins" and that he informed her that he had not received his medication since his return in to PICC from Berks County in February.  (*Id.*)  In response to the nurse's inquiry, Hawkins informed her of the medications he had been prescribed and the medications he had "taken on the street." (*Id.*)  He also informed the nurse that he had been diagnosed with A.D.H.D., depression, bi-polar mood disorder, separation anxiety, anxiety, and P.T.S.D.  (*Id.*)  Hawkins explained to the nurse that due to the lack of medication, "his mental state was worsening and [he was] having suicidal thoughts" and "needed help." (*Id.* at 20.)  On July 1, 2022, Hawkins requested that Defendant McCullum "send him to medical because he needed to talk to someone about his meds" and that "no one was [taking] his

---

[3] Hawkins asserts that he returned to PICC on February 16, 2022.  (Compl. at 19.)

complaints seriously." (*Id.*)  According to Hawkins, Defendant McCullum "told Hawkins that she didn't work for medical and wasn't going to send him to medical because the nurse would be around soon, and Hawkins could speak to her/him when they came around." (*Id.*)

On July 8, 2022, Hawkins was once again transferred to CFCF and placed in D Building. (*Id.*)  On July 11, 2022, Hawkins asked Defendant Crawford "about the law library" and was told that "the law library wasn't open prior to Covid and hasn't been open for a while, and since it wasn't enough staff they rather for us to come out for recreation instead of law library." (*Id.*) After Hawkins informed Defendant Crawford that he "didn't have a lawyer and was trying to file a lawsuit," Defendant Crawford told Hawkins that "when the law library opened up Hawkins would have to choose between recreation and [the] law library." (*Id.* at 20-21.)  Hawkins and Defendant Crawford argued over this and Defendant Crawford "made Hawkins lock-in his cell due to going back and forth." (*Id.* at 21.)

Hawkins filed grievances related to the alleged incidents, which are attached to the Complaint as exhibits. (*Id.* at 29, 30, 32, 34, 35, 36, 39, 40.)  He also attached to the Complaint copies of the Misconduct Reports pertaining to the April 25, 2021, and July 17, 2021 altercations, as well as copies of the Sick Call Requests Hawkins filed on February 28, 2022, and March 10, 2022. (*Id.* at 31, 33, 37, 38.)  Hawkins seeks monetary damages, as well as declaratory and injunctive relief. (*Id.* at 22.)

## II.    STANDARD OF REVIEW

The Court grants Hawkins leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. §

---

[4] However, as Hawkins is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a

claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the

same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),

*see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early

stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true,

draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint,

liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations

omitted)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Hawkins is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v.

Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)).  "This means we remain flexible, especially 'when dealing with

imprisoned *pro se* litigants[.]'"  *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the

relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'*pro se*

litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting

*Mala*, 704 F.3d at 245).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42

U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Hawkins alleges violations of his Eighth and Fourteenth Amendment rights.  (*See* Compl. at 6.)  Liberally construing Hawkins's Complaint as this Court must do, the Court understands Hawkins to be presenting claims regarding the conditions of his confinement, procedural due process violations, deliberate indifference to medical needs, and for denial of access to the law library.

### A.      Conditions of Confinement Claims

Hawkins presents several claims pertaining to the conditions of his confinement at the various Philadelphia facilities, both while he was confined as a pretrial detainee and after he was convicted and sentenced on September 29, 2021.  The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees, while the Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

Pretrial detainees in custody are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (*per curiam*) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective.").  In that regard, "a 'particular

measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).[5]

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care, and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson*, 495 F.3d at 68. The objective component

---

[5] Courts should consider the totality of the circumstances in evaluating a pretrial detainee's claim of unconstitutional punishment. *Bistrian*, 696 F.3d at 373. Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective

component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]"   *Id.*

(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20).   In

general, a prisoner must assert that prison officials acted with deliberate indifference, meaning

that they consciously disregarded a serious risk to the detainee's health or safety.  *See Wilson*,

501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*)

("'[T]he official must both be aware of facts from which the inference could be drawn that a

substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*,

511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir.

2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different

standard here as we have applied the 'deliberate indifference' standard both in cases involving

prisoners and pretrial detainees." (internal citations omitted)).[6]

Hawkins alleges that his constitutional rights were violated upon intake at CFCF in

September 2020 because he did not receive an "additional jumper and a hygiene packet" on

September 26, 2020, and that he still did not receive the items despite requests to his unnamed

block officer and an unnamed Sergeant on October 1, 2020.  (Compl. at 13.)  According to

Hawkins, the Sergeant "told Hawkins he would have to speak with the morning shift because he

was ready to leave for the day and he wasn't going to go out of his way for some soap."  (*Id.*)

Hawkins asserts that he was unable to shower due to the lack of items.  (*Id.*)  Even assuming

---

[6] A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment
violation.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not
inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and
Unusual Punishments Clause, whether that conduct occurs in connection with establishing
conditions of confinement, supplying medical needs, or restoring official control over a
tumultuous cellblock.").

these allegations could be liberally construed to support a constitutional claim, Hawkins has not adequately tied those allegations to any of the named Defendants.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207 (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, Hawkins's additional claims regarding the denial of a second jumper and lack of hygiene packet based on events in October 2021 and February 2022 when he was a convicted prison, and which are analyzed under the Eighth Amendment standard, are not plausible as pled. First, Hawkins asserts that when he returned to CFCF from DC on October 24, 2021, he again did not receive a second jumper or a hygiene packet during the intake process.  (*Id.* at 15.) Hawkins alleges that when he asked Defendant L. Porrata on November 10, 2021 for a second jumper and a hygiene packet, Defendant Porrata "told Hawkins no and that he was not getting up right now and that Hawkins should of asked while in the receiving room." (*Id.*)  Hawkins further asserts that he informed Defendant Malloy that he had "been here for a while without showering" due to the missing supplies, but was told by Defendant Malloy that "she didn't work for laundry [and] couldn't get the jumper, and it wasn't her fault Hawkins didn't receive a hygiene packet, that it was on the intake officer." (*Id.*)  Second, Hawkins claims that when he was returned to PICC from the Berks County Prison on February 16, 2022, he requested of Defendant Demoe "two sets of blues (uniform) and a roll-up with a hygiene packet," because he had been given one "set of blues and two sheets" upon intake.  (*Id.* at 18.)  According to

11

Hawkins, Defendant Demoe "told Hawkins he could get the other stuff from Hawkins['s] peers on the block." (*Id.*)

Hawkins has not stated plausible constitutional violations against Defendants Porrata and Malloy based on their alleged failure to provide him with a second jumper or hygiene packet in October 2021, or against Defendant Demoe for his alleged failure to provide him with an additional uniform and hygiene packet in February 2022. Hawkins has not plausibly alleged that the deprivations were sufficiently serious or that Defendants Porrata, Malloy, or Demoe consciously disregarded a serious risk to Hawkins's health or safety. *See Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Barndt*, 698 F. App'x at 677 (denial of showers and out of cell exercise for twenty-eight days did not violate Eighth Amendment when plaintiff did not suffer ill effects and had access to running water in his cell); *see also Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) (concluding that whether plaintiff suffered harm was critical to determination of whether unsanitary conditions constituted Eighth Amendment violation).

Moreover, Hawkins has failed to state a plausible Eighth Amendment violation based on the condition of his mattress on February 18, 2022. Hawkins alleges that he complained to Defendant McCullum that the mattress in his cell had "no plastic on it" and it "needed to be cleaned due to the mattress having a smell and being wet." (Compl. at 18.) Hawkins asserts that Defendant McCullum informed him that "she wasn't going to get any mattress right now" even

though Hawkins told Defendant McCullum that there were "open cells with bed in there it was no need for her to go to the receiving room when the mattress could be swapped out." (*Id.*) Hawkins further contends that Defendant McCullum refused to "call[] a Sergeant over a mattress" as requested by Hawkins. (*Id.*) Hawkins's claim does not plausibly plead the objective prong of an Eighth Amendment violation, for it is unclear from his allegations whether the alleged deprivation was sufficiently serious. Hawkins does not specify the duration of the alleged violation. *See Milhouse v. Gee*, No. 09-2134, 2011 WL 3627414, at *13 (M.D. Pa. Aug. 17, 2011) (denial of mattress "for a short period of time" did not rise to the level of a constitutional violation); *but see McClure v. Haste*, F. App'x 125, 129-30 (3d Cir. 2020) (*per curiam*) (holding that evidence of denial of mattress at night for 200 days causing back injury created a genuine issue of fact whether there was a sufficiently serious deprivation).

Accordingly, Hawkins's claims based on the conditions of his confinement will be dismissed. Because the Court cannot say at this time that Hawkins can never state plausible conditions of confinement claims based on the lack of showers and condition of his mattress, the dismissal will be without prejudice, and he will be permitted the opportunity to amend his pleading if he can cure the noted defects.

**B.    Procedural Due Process Claims**

Hawkins alleges that he was placed in segregated housing for thirty days, on two occasions, without disciplinary hearings. Hawkins's claims stemmed from altercations that occurred on April 25, 2021 and July 17, 2021. (Compl. at 13-15.) It appears from the Complaint and the state court docket that these incidents occurred while Hawkins was held as a pretrial detainee at DC. *See Commonwealth v. Hawkins*, CP-51-CR-0000207-2021 (C.P. Phila.) (noting

sentencing on September 29, 2021).  The Court construes Hawkins allegations regarding these incidents as an attempt to set forth Fourteenth Amendment procedural due process claims.

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*) (quoting *Bistrian*, 696 F.3d at 375).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116.  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Quiero v. Ott*, 799 F. App'x 144, 146 n.6 (3d Cir. 2020) (*per curiam*) (noting that the procedural requirements of *Wolff* do not need to be met *before* the inmate is transferred to restricted housing) (emphasis added).

Although Hawkins may be able to allege plausible procedural due process claims based on events stemming from the April 25, 2021 and July 17, 2021 incidents, he has failed to specifically tie such claims to a named individual Defendant.  Hawkins's allegations as pled,

therefore, are insufficient to state a constitutional claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Rode*, 845 F.2d at 1207.  Accordingly, the procedural due process claims based on Hawkins's placement in segregated housing after the events of April 25, 2021 and July 17, 2021, will be dismissed without prejudice and Hawkins will be granted leave to amend to address the noted deficiencies.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### C.      Deliberate Indifference to Medical Needs

Hawkins alleges that he was returned to PICC from Berks County Prison on February 16, 2022.  (Compl. at 18-19.)  On February 27, 2022, Hawkins informed "the nurse handing out medication" that he had not been receiving his medication.  (*Id.* at 19.)  Hawkins contends that the nurse indicated that she would look into the matter and instructed Hawkins to complete a sick call slip, which he did.  (*Id.* at 19, 37.)  Because he received no response to the first sick call slip, Hawkins submitted a second slip on March 10, 2022.  (*Id.* at 19, 38.)  According to Hawkins, "sometime in late June a nurse from mental health came to see" him and he informed her that he had not received his medications since his return to PICC in February 2022.  (*Id.* at 19.)  In response to the nurse's questions, Hawkins detailed the medications he had been prescribed and his diagnoses, and informed her that "his mental health state was worsening and [he was] having suicidal thoughts and . . . needed help."  (*Id.* at 20.)  Hawkins further alleges that he asked Defendant McCullum to send him to medical on July 1, 2022 because he needed to speak with someone regarding his medication and that "no one was taking his complaints seriously."  (*Id.*)

Hawkins alleges that Defendant McCullum told him "that she didn't work for medical and wasn't going to send him to medical because the nurse would be around soon and Hawkins could speak to her/him when they came around." (*Id.*)

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[7] *See Farmer*, 511 U.S. at 835.  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted).  Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  "[W]here denial or

---

[7] As it appears that Hawkins was a convicted prisoner at the time of these events, the Eighth Amendment governs his claims.

delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

Accepting Hawkins's allegations as true, as the Court is obligated to do at this stage of the litigation, Hawkins will be permitted to proceed on his deliberate indifference to medical needs claim against Defendant McCullum.  To the extent Hawkins seeks to assert deliberate indifference to medical needs claims based on the failure of another individual or individuals to provide him with medication after he returned to PICC on February 16, 2002, because Hawkins has failed to specifically tie such claims to a named individual Defendant the claims are not plausible.  *See Rode*, 845 F.2d at 1207.  As discussed more fully below, if Hawkins chooses to file an amended complaint, he will have the opportunity to cure this deficiency.

### D.    Access to Law Library

The Court understands Hawkins to allege that his constitutional rights were violated when he was unable to use the law library in July 2022.  (*See* Compl. at 20.)  A claim asserting restrictions on access to the prison law library is considered an "access-to-the-courts" claim under the First Amendment.  *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*).  Incarcerated individuals have a constitutional right to "adequate, effective, and meaningful" access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts.").  To prevail on an alleged denial of access to the courts claim, a plaintiff "is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)).  In other words, a prisoner claiming that a defendant denied him access to the courts must allege an injury traceable to the conditions of which the prisoner

17

complains.  *See Diaz*, 532 F. App'x at 63 (affirming district court's dismissal of *pro se* prisoner's denial of access to courts claims where prisoner failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that he lost a "nonfrivolous" and "arguable" claim because a defendant denied the prisoner access to the courts.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Thus, "[t]he underlying cause of action . . . is an element that must be described in the complaint."  *Id.*

Hawkins has not stated a plausible access to courts claim because he has not alleged an actual injury resulting from his inability to use the law library.  He has not described anywhere in his Complaint what "nonfrivolous" or "arguable" claim he has lost as a result of his inability to access the law library or its materials.  *Harbury*, 536 U.S. at 415.  Without allegations of an actual injury, any claim based on the denial of his ability to use the prison law library is not plausible.  *See Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (*per curiam*) (affirming district court's conclusion that there was no denial of access to the courts where inmate, *inter alia*, failed to allege what underlying nonfrivolous claims he was unable to pursue).  Accordingly, Hawkins's access to courts claim under the First Amendment will be dismissed.

### E.     Claims Against Deputy Warden Rose

Hawkins does not clearly state the basis for a claim against Defendant Rose, who is identified as the Deputy Warden of CFCF.  Hawkins alleges that, on an unspecified date, "following a routine hearing that's conducted on Tuesdays and Thursdays," he informed Defendant Rose that he had been denied help by Defendants Porrata and Malloy in obtaining an additional jumper and hygiene packet.  (Compl. at 16.)  Hawkins further contends that he argued with Defendant Rose, who then told Hawkins that he would not help Hawkins.  (*Id.*)  To the extent that Hawkins seeks to bring a claim against Defendant Rose based on Rose holding a

supervisory position over Defendants Porrata and Malloy, Hawkins has not stated a plausible

claim.  There are "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d

307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused [the] constitutional

harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d

Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983

if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as

the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional

conduct."  *Id.*  Hawkins has failed to allege that Defendant Rose established and maintained a

policy, practice or custom with deliberate indifference that caused constitutional harm, and he

has failed to allege Defendant Rose's personal involvement in any alleged underlying

constitutional violation.[8]  Accordingly, the individual capacity claims against Defendant Rose

are not plausible.

---

[8] To the extent that Hawkins's claims against Defendant Rose are based on an alleged failure to
respond adequately to grievances he filed, the claims are also not plausible.  Claims based on the
handling of prison grievances fail because "[p]rison inmates do not have a constitutionally
protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir.
2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per
curiam*); *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*)
("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process,
[a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the
defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*,
932 F.2d 728, 729 (8th Cir. 1991))).  A prison official's involvement in the grievance process,
alone, is thus not actionable under § 1983.  *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51
(3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in
responding to some of Folk's prison grievances, there are no allegations linking them to the
underlying incidents and thus no basis for liability based on those later grievance reviews.");
*Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court

**F.      Claims against Correctional Officer Kurian**

Hawkins names Correctional Officer Kurian as a Defendant to this action and identifies him as a Correctional Officer who was assigned to DC at the relevant times (Compl. at 9), but presents no allegations against him in the body of the Complaint.  In other words, Hawkins has not alleged what Defendant Kurian did, or did not do, to violate his constitutional rights.  To the extent Hawkins seeks to present a claim against Correctional Officer Kurian, Hawkins has not alleged sufficient facts to proceed against him at this time.  Accordingly, Hawkins's claims against Defendant Kurian are not plausible and will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**G.      Claims against the Philadelphia Department of Prisons**

To the extent that Hawkins presents claims of alleged constitutional violations directly against the Philadelphia Department of Prisons, these claims must be dismissed.  As the United States Court of Appeals for the Third Circuit has held, "the Philadelphia Prison System, [a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an action brought under § 1983.  *Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011) (*per curiam*) (citing 53 Pa. Con. Stat. Ann. § 16257; *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 423 (E.D. Pa. 1998)); *see also Durham v. Philadelphia Prison Sys.*, No. 18-2113, 2018 WL 3105589, at *2 (E.D. Pa. June 25, 2018) (explaining that the "Philadelphia Prison System is not an entity that is subject to suit separate from the City of Philadelphia") (citing 53 Pa. Cons. Stat. Ann. § 16257).  Because the Philadelphia Department of Prisons is not considered a "person" for purposes of § 1983, *Durham*, 2018 WL 3105589 at *2 (citing *Peele v. Philadelphia Prison Sys.*,

---

properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

No. 12-4877, 2015 WL 1579214, at *2 (E.D. Pa. Apr. 8, 2015)), Hawkins's claims against it are dismissed with prejudice.

### H.     Official Capacity Claims

Hawkins seeks to bring claims against the individual Defendants in their official capacities.  (*See* Compl. at 9.)  Claims against City officials named in their official capacity are indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)), *cert. denied*, 140 S. Ct. (2019).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his

injury." *Id.* (internal quotations and alterations omitted).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

To the extent Hawkins seeks damages from the named Defendants in their official capacities, he has failed to allege facts that support *Monell* liability.  Hawkins has not alleged a municipal policy or custom, that such a policy or custom caused a constitutional violation, or municipal failures amounting to deliberate indifference.  Accordingly, the official capacity claims are not plausible and will be dismissed.

## I.     Declaratory and Injunctive Relief

In addition to money damages, Hawkins seeks a declaration that his rights have been violated and an injunction "ordering defendants to cease the punishments . .  toward Hawkins." (Compl. at 22.)  Because declaratory relief is unavailable to adjudicate past conduct, Hawkins's request for declaratory relief is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*,

855 F. App'x 812, 815 (3d Cir. 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

Additionally, to the extent that Hawkins seeks injunctive relief against the named Defendants, such claim is moot as Hawkins is no longer in the custody of the Philadelphia Department of Prisons.[9]  *See Robinson v. Cameron*, 814 F. App'x 724 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims.").

## IV.    CONCLUSION

As set forth more fully above, Hawkins's § 1983 claims against the Philadelphia Department of Prisons and his claims seeking declaratory relief will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible.  Further, the Court concludes that amendment of these claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile.").  Hawkins's claim for injunctive relief will be dismissed as moot.

Because the Court cannot say at this time that Hawkins cannot cure the defects in his claims for (1) unconstitutional conditions of confinement; (2) procedural due process violations based on the failure to provide disciplinary hearings stemming from the April 15, 2021, and July

---

[9] State court records reflect that Hawkins was released from custody on July 21, 2022, on his charge in the Court of Common Pleas of Philadelphia County.  *See Commonwealth v. Hawkins*, CP-51-CR-0000207-2021 (C.P. Phila.)  Moreover, Hawkins submitted his pleading from the Berks County Prison.  (*See* Compl. at 28.)

17, 2021 altercations; (3) deliberate indifference to serious medical needs; and (4) denial of access to the law library, these claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Hawkins will be granted the option of filing an amended complaint to assert a plausible basis for these claims.  Any amended complaint must clearly describe the factual basis for Hawkins's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.[10]

Alternatively, the Court is prepared to direct service of the Complaint on Hawkins's deliberate indifference to medical needs claim against Defendant McCullum.  Hawkins may notify the Court that he wishes to proceed on this claim only.  If Hawkins chooses not to file an amended complaint, the Court will direct service of the Complaint on Defendant McCullum only.  An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:


**/s/ Jeffrey L. Schmehl**
**JEFFREY L. SCHMEHL, J.**

---

[10] Any amended complaint must provide as much identifying information for the defendants as possible.  Hawkins may refer to a defendant by last name only if that is the only identifying information possessed.  If Hawkins wishes to name individuals for whom he does not have any identifying information, he may refer to those individuals as John Doe #1, John Doe #2, etc.